Dear Emanuel Demedis
On behalf of the County Commissioners of Calvert County, you have requested our opinion as to whether certain special taxing districts established by the Commissioners pursuant to a public local law qualify to receive highway user revenues directly from the State for the maintenance of private community roads. In compliance with our policy concerning opinion requests from local governments, you provided your own legal analysis of the question. You stated that you believe that these particular districts do not qualify for direct funding, reasoning that a special taxing district must be a "body politic" to qualify for direct funding.
As explained below, we reach a similar conclusion, but for a different reason. In our opinion, the General Assembly did not contemplate an allocation of highway user revenues to a special taxing district unless the roads in the district are dedicated or otherwise entrusted to a public body or government agency.
 I Background
A. Highway User Revenues
Highway user revenues derive from an account within the State Transportation Trust Fund known as the Gasoline and Motor Vehicle Revenue Account. TR §§ 3-216, 8-402(a). It is the repository for funds from a variety of sources, including the motor vehicle fuel tax and certain revenue collected through the vehicle titling tax, vehicle registration fees, the corporate income tax, and the sales and use tax on short-term vehicle rentals. See
TR § 8-402(b). *Page 199 
The State has long shared revenues credited to that account with localities. Under various statutory formulas, portions of the revenues are allocated to Baltimore City, the counties, and various other local entities. TR §§ 8-403, 8-404, 8-405. The State Highway Administration ("SHA") is responsible for determining the appropriate amount to be distributed to each local entity under those formulas.
With respect to the counties, one-half of the available funds is allocated on the basis of county road mileage and the other half is allocated on the basis of vehicle registrations. TR §§ 8-403, 8-404.[1] For purposes of these computations, a "county road" is defined as "any public highway . . . title to which or the easement for the use of which, is vested in a public body or governmental agency; and [t]hat is not a State highway or located in Baltimore City." TR § 8-101(g). A separate formula allocates funds to Baltimore City. See TR § 8-403.
Another formula allocates funds to each "eligible municipality" — defined as "any municipal corporation, special taxing district, or other political subdivision of this State other than a county or Baltimore City" that is "authorized by law to construct or maintain streets or roads." TR § 8-401(c-1), (e). Thus, the phrase "eligible municipality" includes some local entities that are not municipal corporations. An eligible municipality is to request its share of highway user revenues from SHA in writing at least six months before the start of the fiscal year for which the money is desired. TR § 8-405(a). As with the counties, the available funds are allocated on the basis of "county road" mileage and vehicle registrations in the municipality. TR § 8-405.[2] *Page 200 
Under the current funding formula, approximately 9% of the revenues go to local entities.[3] In particular, Baltimore City is to receive 7.9% of the Account in Fiscal Year 2011 and 7.5% in subsequent fiscal years. TR § 8-403. The total share distributed to the counties is 0.5% in Fiscal Years 2011 and 2012 and 1.4% in subsequent fiscal years. Id. Municipalities are to receive 0.1% in Fiscal Years 2011 and 2012 and then 0.3% in subsequent fiscal years. Id. We understand that 148 "municipalities" received highway user revenues directly from the State during Fiscal Year 2010, including three special taxing districts located in Montgomery County.[4] *Page 201 
B. Special Taxing Districts in Calvert County
The General Assembly has authorized the Board of County Commissioners of Calvert County to establish special taxing districts by local ordinance. Code of Public Local Laws of Calvert County ("PLL") § 4-101 et seq.[5] Under that law, the County Commissioners may establish a special taxing district upon petition by a homeowners association, as defined in the Maryland Homeowners Association Act.[6] PLL § 4-101(b)(1). The boundaries of the district are limited to the land within the County over which the homeowners association has authority pursuant to a declaration filed under the Homeowners Association Act. PLL § 4-101(c).[7] When a special taxing district is established, the County Commissioners "may levy and collect special taxes or assessments, on property in [the] district[] receiving special benefits" in order to pay, among other things, "the cost of furnishing, providing, and maintaining . . ."[c]ommunity roads and streets . . ." PLL § 4-101(a)(2)(i).[8] *Page 202 
You stated that two homeowners associations successfully petitioned for the creation of special taxing districts under this law.[9] According to your letter, most of the funds collected for these districts have been applied to providing and maintaining private community roads. You indicated that the community roads in the special taxing districts have been included in the County's road inventory for purposes of SHA's computation of the County's allocation of highway user revenues and that the County has shared a portion of those revenues with the homeowners associations.
 II Analysis
The question has now arisen whether a homeowners association in Calvert County may apply directly to SHA for a share of the State highway user revenues with respect to its special taxing district. In our view, the answer to this question turns on whether the special taxing district is an "eligible municipality" for purposes of the law governing highway user revenues and whether its roads qualify as "county roads" under that law.
A. Whether a Special Taxing District is an "EligibleMunicipality"
As noted above, an "eligible municipality" is "a municipality authorized by law to construct or maintain streets or roads." TR § 8-401(c-1). There appears to be no question that the special taxing districts in Calvert County are authorized by PLL § 4-101 to maintain local roads. You question whether they qualify as "municipalities."
The term "municipality" is defined for purposes of the statute as "any municipal corporation, special taxing district, or other political subdivision of this State other than a county or Baltimore City." TR § 8-401(e) (emphasis added).[10] While the phrase "special *Page 203 
taxing district" is not defined in the highway user law, the reference to "any" such district indicates that the General Assembly intended that the definition be broadly inclusive.
The legislative history of the definition of "municipality" also indicates that the phrase should be construed liberally. Even before enactment of the highway user revenue statute, the General Assembly had authorized the allocation of gasoline tax revenues to support roads in special taxing areas, both by general legislation as well as by legislation applicable to specific counties. See
Article 89B, §§ 9(b) and 9A(2) (1939 and 1943 Supp.). The General Assembly had also provided for direct allocations to individual municipalities. Id., § 14A (Town of Midland).
In 1947, the Legislature first enacted a definition of "municipality" for purposes of the highway user revenue law. The statute provided:
 [t]he word "municipality" shall mean any
municipality, special taxing area, district, or other political subdivision of this State other than a county or Baltimore City.
Chapter 560, § 14, Laws of Maryland 1947, codified at Annotated Code of Maryland, Article 89B, § 9(g) (emphasis added). Thus, as originally enacted, the definition encompassed a "special taxing area" as well as a "special taxing district."[11] The Legislature has *Page 204 
used the phrases "special taxing area" and similar terms sometimes to refer solely to public entities and sometimes to encompass geographical areas not associated with a particular entity.See 89 Opinions of the AttorneyGeneral 107, 109 n. 4 (2004). The reference in the definition to "any" special taxing district or area indicates that the General Assembly was using the phrase in this context without any special limitation. Moreover, when the
Legislature has intended to limit the universe of special taxing districts to which a law applies, it has often done so explicitly.See, e.g., Annotated Code of Maryland, Article 26, § 1(b) (defining "governmental entity" as a special taxing district with specified characteristics).
After its initial enactment, the definition of "municipality" was reworded solely for stylistic purposes when it was recodified as part of the new Transportation Article in 1977. Chapter 13, § 2, Laws of Maryland 1977. There was no evident purpose to narrow the definition. It has not subsequently been amended.
The special taxing districts formed in Calvert County pursuant to PLL § 4-101 et seq. thus appear to fall within the definition of "eligible municipality" under the highway user revenue law. However, whether or not these special taxing districts qualify as "eligible municipalities" under TR § 8-401, there is a more fundamental barrier to the direct allocation of highway user revenues to them.
B. Whether the Roads in the Special Taxing Districts are"County Roads"
You indicated that the roads in question are private community roads. This raises the question whether a special taxing district, even *Page 205 
if it qualifies as an "eligible municipality," may obtain highway user revenues if it has only private roads.
This question is distinct from whether it is appropriate to finance such roads locally through a special taxing district. Private community roads qualify for inclusion in a special taxing district under PLL § 4-101 because a homeowners association has authority over them. Accordingly, they are appropriately financed through special local taxes or assessments levied in the district coincident with the homeowners association. PLL § 4-101(a)(2)(i) and (c). But that does not resolve the eligibility of those roads for a subsidy from State highway user revenues.
Under TR § 8-408(c), a municipality is authorized to spend highway user revenues for the "construction, reconstruction, or maintenance of roads and streets." The terms "road" and "street" are both defined to mean "highway." TR § 8-101(o), (s). The term "highway" in turn is defined by the statute at some length, but without a clear indication whether it refers to public roads. TR § 8-101(i).[12]
Other portions of the statute indicate that highway user funds are intended generally to finance public roads. The statutory allocation formulas for the distribution of funds to counties and municipalities do not take into account private community roads. Rather, they are based in part on the mileage of "county roads" *Page 206 
within a county or municipality. TR §§ 8-404(b)(1), 8-405(c)(1). As noted earlier, a "county road" is a "public highway . . . title to which or the easement for the use of which, is vested in a public body or government agency . . ." TR § 8-101(g). Thus, it is clear that the term does not extend to private community roads, even if such roads are accessible to the public. This suggests that State highway user funds distributed to municipalities are intended for public roads.
A review of the statute's legislative history confirms this conclusion. When the predecessor of the current statute was first enacted in 1947, a municipality's share of highway user revenues was based solely on the mileage of county roads in the municipality. Chapter 560, § 14, Laws of Maryland 1947, then codified at
Annotated Code of Maryland, Article 89B, § 13(b). In other words, a municipality shared in highway user revenues only to the extent that it had "county roads." A special taxing district or other municipality without any county roads would receive no funds. Then, as now, the definition of "county road" clearly referred to public roads of a local government entity. See
Chapter 560, § 12, Laws of Maryland 1947, then codified at
Article 89B, § 1A(d) ("The term `county roads' means any
public roads, excluding State roads, and including hard-surfacedor paved streets of municipalities (except Baltimore City), title to which, or the easement for the use of which, is vested in a public body or governmental agency by grant, condemnation, or dedication. . . .") (emphasis added).[13] The basis for this restriction is self-evident — absent a dedication or an appropriate easement, there could be no assurance that the roads would continue to be operated as public roads.
In 1968, the allocation formula for the local distribution of highway user revenues was modified to take account of motor vehicle registrations in each jurisdiction. Chapter 447, § 3, Laws of Maryland 1968, now codified at TR §§ 8-404(b)(2), 8-405(c)(2). In our view, this change was not intended to allow highway user revenues to be used to subsidize private roads in municipalities. Rather, it appears more likely that the number of motor vehicle registrations was added to the existing formula as a proxy for the relative use that the roads received — use that would necessitate the maintenance and reconstruction that the highway user funds were intended to finance. *Page 207 
It is also notable that the motor vehicle registration factor was simultaneously added to the formulas for both counties and municipalities. Yet, when the Legislature decided in 1979 to authorize a county to use the funds to maintain private roadways, it did so by separate specific legislation. See
Chapter 195, Laws of Maryland 1979, codified at
TR § 8-408(b)(2)(ii) (authorizing use of highway user revenues for maintenance of private roads in Talbot County). Even then, the use of highway user revenues for that purpose was justified on the basis that the particular roads had been used by the public for 20 years or more. See Letter of Albert K. Wood, Talbot County Manager to Delegate William S. Horne (October 23, 1978).
Thus, in our view, only municipalities with "county roads" — that is, roadways for which the title or an easement is vested in a public body or governmental agency — may directly apply for an allocation of State highway user revenues.[14]
We understand that this interpretation is consistent with SHA's administration of the statutes governing the distribution of highway user revenues to local governments. An agency's interpretation of a statute it administers, though not binding on a court, ordinarily is entitled to considerable weight. See, e.g., Crofton ConvalescentCenter, Inc. v. Dep't of Health and Mental Hygiene,413 Md. 201, 215, 991 A.2d 1257 (2010). Although there are a number of instances in which a community that has retained title and responsibility for maintenance of its roads, but has received highway user revenues through its county, it is our understanding that SHA has required such communities to grant some form of easement to the county government in order to qualify for such funding.[15] *Page 208 
 III Conclusion
In summary, it is our opinion that the special taxing districts identified in your requests are not entitled to a direct allocation of highway user revenues. Unless the roads in those districts are dedicated or otherwise entrusted to a public body or government agency, they do not qualify for highway user revenue funding.
Douglas F. Gansler Attorney General
William R. Varga Assistant Attorney General
Robert N. McDonald Chief Counsel
Opinions and Advice
[1] The mileage formula is the ratio of a county's total mileage of county roads, excluding the mileage of county roads in eligible municipalities, to the total mileage of county roads in all of the counties, again excluding county roads within eligible municipalities. TR § 8-404(b)(1). The vehicle registration formula is the ratio of the number of motor vehicles registered to owners with addresses in the county to the total number of motor vehicles registered to owners in all counties, again excluding addresses within eligible municipalities from both parts of the ratio. TR § 8-404(b)(2).
[2] The mileage formula is the ratio of the mileage of county roads in the municipality to the total mileage of county roads located in eligible municipalities throughout the State. TR § 8-405(c)(1). The vehicle registration formula is the ratio of the number of motor vehicles registered to owners with addresses in the municipality to the total number of motor vehicles registered to owners with addresses in all eligible municipalities throughout the State. TR § 8-405(c)(2).
[3] Prior to Fiscal Year 2010, 30% of the Account was allocated to Baltimore City, counties and municipalities. TR § 8-403 (2008 Repl. Vol.). In the wake of the State's recent fiscal difficulties, the local share of highway user revenues was significantly reduced for Fiscal Years 2010 and 2011. The most recent adjustments were made as part of the Budget Reconciliation and Financing Act of 2010. See
Chapter 484, §§ 9, 10, and 34, Laws of Maryland 2010. Under the current formula, in Fiscal Years 2011 and 2012, 23.0 % and 20.4 %, respectively, of the Account is to be distributed to the State's general fund; 68.5 % and 71.5 %, respectively, is to used for the purposes for which Transportation Trust Fund monies can be used. The balance is distributed to local entities. In subsequent years, 19.3% is to be distributed to the State's general fund and 71.5% used for the purposes for which Transportation Trust Fund monies can be used, resulting in a balance of 9.2 % to be distributed to local governments. The General Assembly also expressed its intent that a working group formed to review transportation funding or local aid provide recommendations on the distribution of local highway user revenues beginning in Fiscal Year 2013. See
Chapter 484, § 35, Laws of Maryland 2010.
[4] Those districts were the Village of Drummond, the Village of Friendship Heights, and the Town of Oakmont. See 3 Montgomery County Code, chs. 65, 66, and 70. Each of these districts was established by the General Assembly before Montgomery County adopted charter home rule.
[5] A public general law — Annotated Code of Maryland, Article 24, § 9-1301 — also authorizes certain counties, including Calvert County, to establish special taxing districts for certain purposes. We understand that the County relied solely on its authority under PLL § 4-101 et seq. in establishing the districts in question.
[6] Annotated Code of Maryland, Real Property Article ("RP"), § 11B-101 et seq.
[7] Under the Homeowners Association Act, a declaration is an instrument recorded in the land records that authorizes the association to impose mandatory fees on lots, or owners and occupants of lots, in connection with the provision of services or some other benefit. RP § 11B-101(d).
[8] The enabling legislation also addresses the documentation that must accompany the petition from the homeowners association, the procedures for adoption of an ordinance establishing a special taxing district, the collection of taxes levied in the district, the transfer of funds to the homeowners association, and the use and monitoring of funds transferred to a homeowners association. PLL §§ 4-101 through 4-104. The General Assembly recently amended the law to address the disposition of funds remaining in a special taxing district when it is terminated. Chapter 729, Laws of Maryland 2010, adding PLL § 4-103(d).
[9] The two homeowners associations established as special taxing districts identified in your letter are Drum Point and Chesapeake Ranch Estates. See Code of Calvert County § 136-24 etseq. (as amended by Ordinance 24-09) and § 136-42 et seq., respectively.
[10] Somewhat redundantly, the term "political subdivision" also encompasses special taxing districts. It is defined to include: "(1) [a]ny county or municipal corporation; and (2) [u]nless the context requires otherwise, any special taxing district." TR § 1-101(k) (emphasis added).
[11] At that time, constitutional home rule for municipal corporations was not yet available, the option of code home rule for counties was unheard of, and no county had yet adopted charter home rule. As a result, the General Assembly would routinely enact and amend the charters for individual municipalities and public locals laws for every county. The General Assembly also established special taxing districts by public local law — entities that provided some municipal services, but that apparently stopped short of general purpose governments and that were sometimes referred to as "quasi-municipal corporation[s]." See Barlow v. Friendship HeightsCitizens' Comm., 276 Md. 89, 92, 344 A.2d 415 (1975).
Several of these special districts continue to operate under local legislation enacted by the General Assembly. It is noteworthy that when the General Assembly amended the Express Powers Act applicable to charter counties and granted authority to create or modify special districts for any of the purposes enumerated in Article 25A of the Code, it excluded, subject to specific exceptions, authority to legislate for special districts governed by a citizen's committee or commission elected or appointed independently of the county council. Article 25A, § 5(O). Thus, the General Assembly has retained for itself authority to legislate for such districts. See Barlow v. Friendship Heights Citizens'Comm., 276 Md. at 90 n. 1.
[12] "Highway" includes:
 (1) Rights-of-way, roadway surfaces, roadway upgrades, shoulders, median dividers, drainage facilities and structures, related stormwater management facilities and structures, roadway cuts, roadway fills, guardrails, bridges, highway grade separation structures, railroad grade separations, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, and other structures forming an integral part of a street, road, or highway, including bicycle and walking paths; and
 (2) Any other property acquired for the construction, operation, or use of the highway.
TR § 8-101(i)
[13] The definition was incorporated in the new Transportation Article without substantive change in 1977 and has remained so to this day.
[14] In 2007, the General Assembly also considered legislation which, among other things, would have expressed the intent of the Legislature that Calvert County accept an easement for public travel on highways in all special taxing districts and that such highways be included in the County's road inventory for purposes of calculating highway user revenues. See Fiscal and Policy Note on House Bill 1077 (2007). However, this legislation did not pass.
[15] We understand that, in determining allocations, SHA either omits community roads from a county's inventory or classifies them as "other public roads" that are open to unrestricted travel, but not included as part of any county, municipal, or other publicly owned road system. In order for a road to qualify for highway user revenue funding, SHA requires an easement granting public access. *Page 209